IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVIS CONSTRUCTION SUPPLY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 21-0550-WS-M ) |
| MERCHANTS TRANSFER CO., INC., | ) ) ) |
| Defendant. | ) ) |

ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 47). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 46, 48, 50-54), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

BACKGROUND

According to the complaint, (Doc. 1), the plaintiff is a real estate development distribution company, and the defendant is a warehousing company. In 2007, the parties executed a "Commercial Lease" ("the Agreement"), pursuant to which the plaintiff gained access to 40,000 square feet of space, in which it stored almost 200,000 gypsum boards. Many years later, the plaintiff discovered extensive water damage to its goods, with over one-third of the boards deemed unusable. The water entered the facility through holes in the roof and exterior walls. The plaintiff seeks recovery of almost $2 million, representing the value of the damaged boards and the costs of removing and disposing of them and of

transferring the remaining boards to a different facility. The two causes of action asserted are for breach of contract and for negligence.

The defendant argues: (1) that it owes no duty of reasonable care as a warehouse; (2) that the negligence claim is barred by the statute of limitations; (3) that the contract claim is barred by the plaintiff's contractual breaches; and (4) that both claims are barred by various provisions of the Agreement.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with

respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

### A. Duty of Reasonable Care.

Alabama's version of the Uniform Commercial Code ("UCC") imposes liability on a "warehouse" for damages "caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances." Ala. Code § 7-7-204(a). The complaint alleges that the defendant was acting as a warehouse and was negligent within the contemplation of Section 7-7-204(a). (Doc. 1 at 1-2, 7; Doc. 52 at 9, 23). A "warehouse" is defined as "a person engaged in the business of storing goods for hire." *Id*. § 7-7-102(a)(13). A warehouse is a form of bailee. *Id*., official comment 1. "In order for a bailment to exist the bailee must have voluntarily assumed the custody and possession of the property for another." *Ziva Jewelry, Inc. v. Car Wash Headquarters, Inc*., 897 So. 2d 1011, 1014 (Ala. 2004) (internal quotes omitted).

The plaintiff acknowledges that the Agreement determines whether the defendant acted as a warehouse/bailee or as a lessor. (Doc. 52 at 24). The style of the document reads, "Commercial Lease," and the body identifies the document as a "lease" at least 55 times. (Doc. 46-1). The document describes the parties as "Lessor" and "Lessee" over 200 times, collectively, and never as anything else. Related terms, such as "let," "sublease," "leasehold interest" and "Leased Premises," are used at least 15 times. The plaintiff's payments to the defendant are described as "rent" or "rental" at least 32 times.

The foregoing is strong evidence that the defendant is a lessor rather than a warehouse, but the *coup de grâce* is administered by the Agreement's treatment of

3

the critical issue of possession. The space is designated "for continuous use and occupancy by the Lessee." (Doc. 46-1 at 1, ¶ 2). Under the heading of "Possession," the plaintiff is assured that it "shall peacefully and quietly have, hold and enjoy the Premises." (*Id*., ¶ 4). Upon default, the defendant has the right to "re-enter and take possession of the Premises." (*Id*. at 2, ¶ 10). An event of default occurs if the plaintiff "vacates the Premises or abandons the possession thereof." (*Id*.). Upon condemnation, the plaintiff may notify the defendant of its election to "surrender possession of the Premises or … continue in possession." (*Id*. at 6, ¶ 29). And the plaintiff's "absolute right to quiet enjoyment of the Premises shall be maintained." (*Id*. at 7, ¶ 33). Against this avalanche of provisions, it cannot seriously be contended that the defendant acted as a warehouse, taking possession of the drywall, rather than as a mere lessor of the space where the plaintiff, as lessee, maintained possession of both the space and the drywall stored therein.

In opposition, the plaintiff relies on a single excerpt from the Agreement, which provides in pertinent part that the defendant "does hereby demise and let unto [the plaintiff] 40,000 square feet of *warehousing* … [f]or continuous use and occupancy by the Lessee as a *warehouse* for" drywall. (Doc. 46-1 at 1, ¶ 2 (emphasis added)). The plaintiff assumes the italicized words have thaumaturgical powers they do not in fact possess. A "warehouse" is simply "[a] building used to store goods and other items," Black's Law Dictionary 1721 (9th ed. 2009), a definition that says nothing about who is doing the storing. "Warehousing" similarly denotes storage without identifying who is in possession of the stored goods, and the balance of the quoted sentence makes clear that possession remains with the plaintiff as the one "us[ing] and occup[ying]" the "let" premises. Indeed, the Agreement later confirms that "Lessee intends to store drywall at the premises …." (Doc. 46-1 at 3, ¶ 12). The plaintiff points out that the dictionary definition of "store" is "a place where goods are deposited [or stored]," (Doc. 52 at 22-23 (internal quotes omitted), but such a definition does not identify who is in

4

possession of the stored goods.  Paragraph 12, however, expressly identifies the plaintiff as the one storing the drywall.

The plaintiff proposes that the Agreement is ambiguous as to whether the defendant acted as a lessor or as a warehouse, allowing the introduction of extrinsic evidence and creating a jury question as to the Agreement's meaning.  (Doc. 52 at 24).  A contract is ambiguous only if its terms are "susceptible of more than one reasonable meaning," *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000), and the preceding discussion leaves no doubt that the only reasonable construction of the Agreement is as a lease, not a warehouse agreement.  The defendant therefore owed the plaintiff no duty of care under Section 7-7-204(a) and is entitled to summary judgment as to this theory of negligence.

In a separate section of its brief, the plaintiff argues that, even if the defendant acted as a lessor, it still breached a duty of reasonable care it owed the plaintiff based on its voluntary undertaking of a duty to inspect and repair the roof and exterior walls.  (Doc. 52 at 24).  Because the defendant does not address this argument in either of its briefs, it has not met its initial burden on motion for summary judgment as to this theory of negligence.


**B.  Statute of Limitations.**

The parties agree that the limitations period for the plaintiff's negligence claim is two years, with the clock beginning to run on the date the injury to the drywall occurred.  They also agree that the damage to the drywall occurred sometime before it was discovered by the plaintiff in the summer of 2019, with its full extent being known no later than November 2019.  This action was filed on

December 27, 2021, which all sides agree falls outside the limitations period. (Doc. 46-3 at 2-3; Doc. 48 at 18-19; Doc. 52 at 25).[1]

To salvage its negligence claim, the plaintiff invokes Alabama's version of the doctrine of equitable tolling.  According to the plaintiff, although it knew by the summer of 2019 that its goods had sustained water damage, it could not pursue recovery for its losses until it had completed an inspection of all 200,000 gypsum boards, which it was "diligent" to complete by November 2019.  At some unstated point thereafter, the plaintiff made a claim with the defendant's insurer, which it "diligently" pursued until the insurer denied coverage in April 2021.  After that, the plaintiff "diligently" continued to press the issue with the insurer before finally giving up in December 2021 and filing the instant action.  The plaintiff argues that public policy favors the informal resolution of disputes, such that its decision to exhaust efforts to recover from the defendant's insurer before suing the defendant should trigger application of equitable tolling.  (Doc. 52 at 25-26).

"A litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way as to the filing of his action."  *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (internal quotes omitted).  The plaintiff has shown neither.

To be extraordinary, a circumstance must be "beyond the [plaintiff's] control" and must have "prevented [the plaintiff] from complying with" the statutory filing deadline.  *Weaver*, 155 So. 3d at 958, 959 (emphasis and internal quotes omitted); *accord id*. ("Any inequitable circumstances preventing a party

---

[1] Alabama has no discovery rule applicable to claims of negligence. *Utilities Board v. Shuler Brothers, Inc*., 138 So. 3d 287, 292-93 (Ala. 2013).  Nor does the plaintiff invoke the fraudulent concealment provision of Alabama Code § 6-2-3.  *See DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010) (Section 6-2-3 applies to the fraudulent concealment of claims not sounding in fraud).  Even had the plaintiff successfully invoked this provision, the two-year clock would have begun to run no later than the summer of 2019.

from initiating a timely lawsuit must be truly beyond the control of the plaintiff.") (internal quotes omitted). The plaintiff was at all times in control of whether and when to file a lawsuit against the defendant, and nothing but its presumably tactical decision to first pursue other avenues of relief prevented the plaintiff from filing such an action in 2019. No extraordinary circumstance is implicated by the plaintiff's argument.

The plaintiff says it was diligent in pursuing recovery from the defendant's insurer. That is debatable,[2] but it is also beside the point. To obtain the benefit of equitable tolling, a plaintiff must have "exercise[d] due diligence in preserving his legal rights," including by "actively pursu[ing] his judicial remedies." *Weaver*, 155 So. 3d at 958 (internal quotes omitted). The plaintiff did not actively pursue a judicial remedy by waiting over two years to file suit after discovering the damage to its property and thus did not act diligently to preserve his legal rights vis-à-vis the defendant.

Because it is barred by the statute of limitations and not salvaged by equitable tolling, the defendant is entitled to summary judgment as to the plaintiff's negligence claim.

**C. Plaintiff's Breach of Contract.**

An essential element of a claim for breach of contract is the plaintiff's "own performance under the contract." *Hooper v. Columbus Regional Healthcare System, Inc.*, 956 So. 2d 1135, 1139 (Ala. 2006) (internal quotes omitted). The defendant phrases the rule thusly: "'[A] substantial breach by one party excuses

---

[2] The earliest evidence regarding the plaintiff's pursuit of an insurance claim is a February 2021 letter from the insurer's adjuster indicating that it had only recently received a claim. (Doc. 51-7 at 6-8). The plaintiff has neither shown that it filed an insurance claim at any time before January 2021 nor explained how a year-long delay in doing so could constitute diligence. Similarly, after the claim was denied in April 2021, (*id*. at 2-5), the plaintiff waited almost three months before objecting to the denial. (*Id*. at 9-11).

further performance by the other.'" (Doc. 48 at 15 (quoting *Nationwide Mutual Insurance Co. v. Clay*, 525 So. 2d 1339, 1343 (Ala. 1987)). The defendant argues that the plaintiff breached provisions of the lease, excusing its own performance and precluding a successful contract claim. (Doc. 48 at 15-17). In particular, the defendant asserts that the plaintiff breached provisions requiring it to make timely monthly rental payments of $15,000 and to maintain liability and other insurance and that these breaches excused the defendant from fulfilling its contractual obligation to "maintain and keep in good repair the … roof and exterior walls of the buildings located on the Premises."[3] (Doc. 46-1 at 1, ¶2; *id*. at 4-5, ¶ 20; *id*. at 6, ¶ 26).

The threshold difficulty with this argument is that the defendant has not met its burden of either directing the Court to evidence as to when each of these alleged breaches occurred or shown that the plaintiff will be unable at trial to demonstrate that the defendant's breach occurred first. As noted, a party's breach excuses only "further" performance by the other. Therefore, only a breach by the plaintiff that preceded the defendant's own alleged breach could trigger application of this rule. The defendant says that the plaintiff first underpaid on rent in August 2009, (Doc. 48 at 16),[4] but the defendant does not say when the plaintiff stopped carrying insurance[5] or when the defendant's alleged failure to

---

[3] The defendant does not seek summary judgment on the grounds that the plaintiff cannot present evidence that the defendant breached this provision. (Doc. 48 at 17).

[4] It is not clear that the plaintiff's reduced payments constituted a breach. According to the testimony of both parties' representatives, the plaintiff's rent was "reduced" or "decreased" or "lowered" by the defendant. (Doc. 46-2 at 6; Doc. 46-4 at 4).

[5] The testimony on which the defendant relies says only that the plaintiff let its insurance go "at some point." (Doc. 46-2 at 6).

maintain the roof in good repair first occurred.[6] Without addressing those dates, the defendant cannot meet its burden on motion for summary judgment of demonstrating the plaintiff's inability to show at trial that the defendant's breach came first.

In *Edwards v. Allied Home Mortgage Capital Corp.*, 962 So. 2d 194 (Ala. 2007), the Alabama Supreme Court held that the rule on which the defendant relies (*i.e.*, that a substantial breach by the plaintiff excuses further performance by the defendant) does not apply if the defendant "continues the agreement with knowledge of the default by the [plaintiff]." *Id.* at 207. In such a situation, the defendant's continuation "operates as a promise to perform in spite of" the plaintiff's breach. *Id.* at 207-08 (internal quotes omitted). The plaintiff, invoking *Edwards*, argues that the defendant cannot rely on the plaintiff's alleged breaches to defeat liability even if they preceded the defendant's alleged breach, because the defendant, with knowledge of them, elected to continue the lease. (Doc. 52 at 18-20).

The defendant does not dispute the evidence that it has continued with the agreement to the present day while at all times having knowledge of the plaintiff's remittance of rent after its due date and in amounts below $15,000.[7] Instead, the defendant notes that *Edwards* permits it to seek damages for the plaintiff's breaches despite the defendant's continuation of the lease with knowledge of them. (Doc. 54 at 9). The defendant's ability to seek affirmative recovery for the plaintiff's breach of contract, however, has nothing to do with the defendant's ability *vel non* to resist the plaintiff's claim for the defendant's breach of contract.

With respect to the plaintiff's failure to maintain insurance, the defendant in its reply brief "submits" that no evidence exists that it was aware of this failure

---

[6] The defendant had no inspection policy regarding the roof and exterior walls but merely fixed problems it was made aware of. (Doc. 51-2 at 2).

[7] (Doc. 48 at 5-6, 16; Doc. 52 at 20).

9

prior to the March 2023 deposition of the plaintiff's principal. As noted, in order to carry its initial burden on motion for summary judgment, the defendant must show, "by reference to materials on file," that the plaintiff cannot establish an essential part of its case. *Clark*, 929 F.2d at 608. The defendant either must produce evidence proving the negative of something as to which the plaintiff must prove the affirmative in order to prevail, or it must identify "materials on file" that show the plaintiff cannot at trial present evidence with which to prove the affirmative. *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*

The defendant has produced no evidence (such as a declaration from an appropriate person) that the defendant was ignorant of the plaintiff's insurance status until March 2023. The defendant therefore has not negated its prior awareness. Nor has the defendant pointed to any materials in the record (such as the plaintiff's response to a request for admission) making clear that the plaintiff has no evidence of the defendant's prior awareness. Instead, the defendant has "simply … state[d]" that the plaintiff cannot prove the defendant's prior awareness. (Doc. 54 at 8 ("[The defendant] submits that Plaintiff cannot produce any such evidence as none exists.")). Such *ipse dixits* are inadequate as a matter of law to carry the defendant's initial burden on motion for summary judgment.

The defendant suggests that, despite the *Edwards* qualification to the rule, it can rely on the principle that a substantial breach by the plaintiff excuses further performance by the defendant, on the grounds that the lease contains an anti-waiver provision. (Doc. 54 at 9). Because, as discussed above, the defendant has failed to demonstrate that the plaintiff's breaches preceded its own, it cannot prevail on motion for summary judgment regardless of *Edwards* or the anti-waiver clause. In any event, the provision does not permit the defendant to circumvent *Edwards*.

> The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the covenants of this lease …, shall not

> be construed as a waiver, or a relinquishment for the future of such covenant …, but the same shall continue and remain in full force and effect.  …. [N]o waiver by the Lessor of any provision hereof shall be deemed to have been made unless expressed in writing, and signed by the Lessor, or Agent.

(Doc. 46-1 at 5, ¶ 22).  Whether or not this provision means that the plaintiff "remains in breach of the Lease," (Doc. 48 at 18), and whether or not it preserves to the defendant a right to seek recovery of rents not paid, it does not purport to excuse the defendant from performing its obligations under the lease once it has continued the lease an unreasonable time after learning of the plaintiff's breach. The provision therefore is not in tension with *Edwards*, which remains applicable to the instant case.

Because the defendant has not properly demonstrated that the plaintiff's breaches preceded its own (or that the plaintiff cannot prove otherwise), and because it has not properly shown that it was unaware of the plaintiff's breaches before its own breach occurred (or that the plaintiff cannot prove otherwise), the defendant has not carried its initial burden on motion for summary judgment.

### D.  Restrictive Contractual Provisions.

The Agreement contains the following provisions:

> Lessor shall not be liable for … any damage to any property on the Premises caused by, or growing out of, fire, rain, lightning, wind, high water, overflow water, freezing or other causes.

(Doc. 46-1 at 2, ¶ 7).

> Notwithstanding anything to the contrary in this Lease, to the fullest extent permitted by law, Lessee and Lessor shall each defend, indemnify and hold the other harmless from and against any and all claims, damages, losses and expenses, including attorneys' fees, arising out of injuries or damage to persons or property occurring in, on or about the premises herein leased, caused in whole or part by negligence of the other, its employees, agents, contractors, licensees or invitees.

(*Id*. at 4, ¶ 19).

11

> Lessor and Lessee each hereby waives such causes of action either may have or acquire against the other which are occasioned by the negligence of either of them or their employees or agents resulting in the destruction of or damage to real or personal property belonging to the other and located on or in the Leased Premises and which are caused by a peril insured against in a standard "all risk" or "Special Form" property insurance policy.

(*Id*. at 5, ¶ 21).

The defendant argues that the first provision precludes both claims brought by the plaintiff and that the other provisions preclude the negligence claim. (Doc. 48 at 10-12). The plaintiff responds that each provision is ambiguous and that the ambiguity precludes summary judgment. (Doc. 52 at 13-18).

"A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Doster Construction Co. v. Marathon Electrical Contractors, Inc.*, 32 So. 3d 1277, 1283 (Ala. 2009) (internal quotes omitted). Inversely, "terms are unambiguous [when they are] susceptible of only one reasonable meaning." *Id*. (internal quotes omitted). "The issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *American Resources Insurance Co. v. H & H Stephens Construction, Inc.*, 939 So. 2d 868, 873 (Ala. 2006) (internal quotes omitted). "If the trial court determines that there is no ambiguity, it must determine the force and effect of the terms of the contract as a matter of law." *Id*. (internal quotes omitted). If a court determines that a provision is ambiguous, it must attempt to resolve the ambiguity by resort to established rules of construction; only if such rules of construction fail to resolve the ambiguity will factual material be considered and jury involvement implicated. *Ohio Casualty Insurance Co. v. Holcim (US)*, 744 F. Supp. 2d 1251, 1259-60 (S.D. Ala. 2010). The plaintiff agrees with all these propositions. (Doc. 52 at 13-14).

The plaintiff does not argue that the provisions on which the defendant relies are ambiguous in themselves. Instead, the plaintiff argues that a comparison of those provisions with other provisions of the Agreement exposes an ambiguity

in each.  (Doc. 52 at 14-17).[8]  The ambiguity is to be resolved, the plaintiff proposes, by the rule of *contra proferentem* or, failing that, by an evaluation of factual material by the jury.  (*Id*. at 17-18).

The plaintiff would leap directly from what it perceives as inconsistency between contractual provisions to resolving the resulting ambiguity against the defendant as the drafter of the document.  That approach is improper.  If a court determines that a contract is ambiguous, "then the court must use established rules of contract construction to resolve the ambiguity."  *FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So. 2d 344, 357 (Ala. 2005) (internal quotes omitted).  "Contract terms will not be construed against the party who framed them if other rules of construction would be thwarted in their legitimate operation by the application of that rule of construction," because "the rule of *contra proferentem* is generally a rule of last resort that should be applied only when other rules of construction have been exhausted."  *Id*. at 357-58 (internal quotes omitted).

One established rule of contract construction is that "[i]nconsistent parts in a contract are to be reconciled, if susceptible of reconciliation …."  *Sullivan, Long & Hagerty v. Southern Electric Generating Co*., 667 So. 2d 722, 725 (Ala. 1995).  This means, as the plaintiff acknowledges, (Doc. 52 at 13), that "[a]ll the provisions of the contract must be construed together so as to give harmonious operation to each of them, so far as their language will reasonably permit."  *City of Fairhope v. Town of Daphne*, 208 So. 2d 917, 924 (Ala. 1968).  Thus, for example, the Alabama Supreme Court ruled that a forum selection clause was not inconsistent with an arbitration provision, as the former could be read as addressing the venue for actions regarding disputes to be resolved outside of

---

[8] "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Jay v. United Services Automobile Association*, 343 So. 3d 18, 21 (Ala. 2021) (internal quotes omitted).

arbitration (which might include suits to challenge the validity or application of the arbitration clause or to enforce an arbitration award). *Advance Tank and Construction Co. v. Gulf Coast Asphalt Co.*, 968 So. 2d 520, 527 (Ala. 2006).

The Agreement imposes on the defendant the obligation to "maintain and keep in good repair the … roof and exterior walls" of the leased premises. (Doc. 46-1 at 6, ¶ 26). The plaintiff argues that it is inconsistent for paragraph 26 to impose a duty only for paragraph 7 to preclude any damages liability for breach of that duty. (Doc. 52 at 15).

Paragraph 7 is not inconsistent with paragraph 26, because they address different things. Paragraph 26 addresses only what the defendant will do, while paragraph 7 addresses only the remedies the plaintiff has if the defendant does not do what it has agreed to do. An inconsistency with paragraph 7 would exist if paragraph 26 both imposed an obligation and stated that the plaintiff would have a damages remedy for its breach, because in that case the Agreement would include mutually exclusive provisions regarding remedy. That situation, however, does not exist.

The implicit premise of the plaintiff's argument is that it is necessarily inconsistent for the Agreement to impose a duty and yet preclude a damages remedy for its breach. The plaintiff offers no argument or authority in support of that proposition, and the only authority submitted by the defendant rejects it.[9]

The law imposes a duty to act non-negligently, and yet it is clear that the parties by properly drawn contract may eliminate a damages remedy for breach of that duty. In *McCay v. Big Town, Inc.*, 307 So. 2d 695 (Ala. 1975), the Alabama Supreme Court upheld a provision substantively identical to paragraph 21 of the Agreement, noting that "exculpatory provisions in a lease or contract between private parties are valid and binding upon the parties to the lease or contract." *Id*.

---

[9] *Book Production Industries, Inc. v. Blue Star Auto Stores, Inc*., 178 N.E.2d 881, 888 (Ill. App. 1961).

14

at 696. The plaintiff has offered no reason to suspect that a lessee may contract away a damages remedy for the lessor's negligence but not for the lessor's breach of contract, and the Court will not endeavor to construct and support such an argument on its behalf.[10]

The Agreement requires the plaintiff to pay the attorney's fees incurred by the defendant in certain listed circumstances, primarily the plaintiff's failure to pay or other breach of the Agreement. (Doc. 46-1 at 4, ¶ 17). The plaintiff argues that this allocation of attorney's fees is inconsistent with that provided in paragraph 19, where the parties agree to defend, indemnify, and hold harmless the other from all loss, "including attorney's fees," arising out of injuries or damage caused by the other's negligence. According to the plaintiff, paragraph 19 means that "neither [party] shall hold each other responsible for attorney's fees incurred, at least in part, for the same triggering reasons" as paragraph 17, which imposes such responsibility. (Doc. 52 at 17).

The inconsistency the plaintiff describes does not exist because, again, the two paragraphs address different subject matters. Paragraph 17 addresses only attorney's fees incurred due to the plaintiff's breach of contract (or bankruptcy, or the issuance of legal process against the plaintiff's stored property), while paragraph 19 addresses only attorney's fees incurred due to the plaintiff's (or defendant's) negligence.

The Agreement provides that the plaintiff "shall look solely to the interest of [the defendant] in the Premises for the satisfaction of each and every remedy of [the plaintiff] in the event of any breach of the [defendant] ...." (Doc. 46-1 at 8, ¶

---

[10] Although unnecessary to the Court's decision, paragraph 7 does not leave the plaintiff without any recourse. The defendant's breach of its obligation regarding the roof and exterior walls' integrity, resulting in damage to the plaintiff's property, presumably would constitute a substantial breach, enabling the plaintiff to cancel the Agreement and remove its property without remaining responsible for additional rental payments for the remainder of the lease term. The plaintiff's decision not to pursue this remedy does not negate its existence.

15

37). The plaintiff argues that paragraph 37 is inconsistent with paragraphs 19 and 21 because the latter provisions "specifically reference negligence, not breach of contract." (Doc. 52 at 17). That is precisely what prevents the provisions from exhibiting any inconsistency: paragraphs 19 and 21 address only negligence, while paragraph 37 addresses only breach of contract.[11]

In summary, the plaintiff does not challenge paragraphs 7, 19, and 21 as ambiguous in themselves. To the uncertain extent that paragraphs 17, 26, and 37 can even superficially be read as in conflict with paragraphs 7, 19, and 21, the provisions may be easily reconciled, eliminating any seeming inconsistency and thus any ambiguity. Because paragraph 7 unambiguously precludes a damages remedy under a contract or negligence theory for damages caused by water intrusion, and because paragraphs 19 and 21 unambiguously preclude recovery under a negligence theory, the defendant is entitled to summary judgment.

## CONCLUSION

The plaintiff's negligence claim is barred by the statute of limitations and by paragraphs 7, 19, and 21 of the Agreement. The plaintiff's contract claim is barred by paragraph 7 of the Agreement. For the reasons set forth above, the defendant's motion for summary judgment is **granted**. This action is **dismissed with prejudice**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 9th day of June, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[11] The plaintiff does not argue that paragraph 37, by contemplating the existence of remedies of the plaintiff should the defendant breach the Agreement, is inconsistent with paragraph 7. The Court would reject any such argument, because: (1) paragraph 37 addresses all possible breaches of contract (including, for example, violation of the right of peaceful possession), not just the breach of paragraph 26; and (2) paragraph 37 does not confirm the existence of a damages remedy but speaks only in terms of "each and every remedy" that may exist.